1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAUL L. HELD,

           Plaintiff,

    v.

CAROLYN COLVIN,

           Defendant.

Case No. 13-cv-05803-NC

**ORDER RE: MOTION TO REMAND AND CROSS-MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 26, 27, 32

Social Security disability hearings are not adversarial proceedings. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). Rather than serving as umpires who mechanically call balls and strikes, administrative law judges in such hearings should share the same goal that claimants and their advocates also seek: "that deserving claimants who apply for benefits receive justice." *Wilcutts v. Apfel*, 143 F.3d 1134, 1138 (8th Cir. 1998) (internal quotation marks and citation omitted). Thus, unlike in the traditional adversarial system of justice, where the trier of fact simply takes in the evidence, deliberates, and makes a decision based on the evidence heard, the ALJ in Social Security proceedings is obligated to play a more active role.

Plaintiff Paul L. Held seeks judicial review of the Commissioner of Social Security's termination of his disability benefits, and argues that the ALJ failed to play this active role. According to Held, the ALJ failed to develop a full and fair record. In particular, the ALJ discounted evidence from Held's treating physician, without instructing Held on the steps he could have taken to cure deficiencies in the evidence so that it could be considered. Held moves to remand with an instruction from this Court that the ALJ

Case No.: 13-cv-05803-NC

United States District Court
Northern District of California

1  consider a new medical report.  Held believes this new report could have influenced the

2  ALJ's decision in his favor.

3      The Court finds that the ALJ failed to develop a full and fair record.  And because

4  the Court finds Held's new evidence material, and he has shown good cause as to why he

5  did not present this evidence earlier, the Court GRANTS IN PART Held's motion for

6  summary judgment, DENIES the government's cross-motion for summary judgment,

7  REVERSES the ALJ's decision, and REMANDS the case for further proceedings.  *See,*

8  *e.g.*, *Martinez v. Astrue*, No. 12-cv-02997 JCS, 2014 U.S. Dist. LEXIS 10534, at *68

9  (N.D. Cal. Jan. 28, 2014) (reversing ALJ decision and remanding for further proceedings

10  after finding ALJ's opinion was not supported by substantial evidence when taking into

11  account the new evidence submitted by claimant).  On remand, the ALJ must consider the

12  new medical report that Held obtained in 2014.

13  **I.     BACKGROUND**

14      **A.     Agency Review**

15      Held was born on May 12, 1960.  AR 40.  In 1983, at age 33, Held became an

16  automotive machinist with the City and County of San Francisco, where he worked in a

17  municipal garage on a variety of vehicles, including big trucks and mowers.  AR 84-85.

18      On January 22, 2004, Held sustained an injury to his lower back.  AR 353 (medical

19  report from April 19, 2012, by treating physician Dr. Joseph Meyers).  On December 6,

20  2004, the Social Security Administration found Held to be disabled due to various physical

21  ailments, including back problems.  AR 29.

22      On February 23, 2011, the Social Security Administration determined that Held was

23  not disabled because a new medical report suggested that his back problems "have

24  significantly improved" and no longer "preclude all work activity."  AR 29, 61.  A State

25  Agency Disability Hearing Officer upheld this determination after a disability hearing, at

26  which Held did not appear.  AR 29.

27      **B.     Administrative Review**

28      Held subsequently requested administrative review of the Social Security

United States District Court
Northern District of California

1    Administration's decision.  AR 29.  On May 17, 2012, the ALJ held a hearing to determine

2    whether Held's disability had ended under section 223(f) of the Social Security Act.  AR

3    29.  On July 16, 2012, the ALJ confirmed the Social Security Administration's

4    determination that Held was no longer disabled as of February 11, 2011.  AR 29.  Held

5    was not represented by counsel at this hearing.  AR 65.

6            **1.  The Hearing**

7            Held states he has been disabled since 2004.  AR 70.  He testified that he has

8    experienced severe back pain, most likely caused by his previous work servicing cars as a

9    mechanic.  AR 76, 78, 84-85.  He states that the back pain hinders him from sitting,

10   walking, or driving for extended periods of time, lifting heavy objects, and bending down.

11   AR 70-76.  Held complained that his back pain grew worse during the five years that

12   preceded the hearing.  AR 77.

13          Held has seen several doctors since his disability arose.  AR 69-70.  Dr. Joseph R.

14   Meyers has been his treating physician since 2004, before Held was awarded disability

15   benefits.  AR 69-70.  At the hearing, Held and the ALJ discussed medical examinations

16   and reports by his treating and examining physicians.  AR 70, 78.  Held testified that Dr.

17   Meyers had examined Held on April 18, 2012, and that x-rays were available.  AR 79.

18   The ALJ insisted that Held present all up-to-date medical records and left the

19   administrative record open for seven days to allow Held time to submit any missing

20   records.  AR 81, 87.

21          A vocational expert testified at the hearing.  AR 85.  He told the ALJ that someone

22   with Held's physical limitations, education, and work experience, could no longer be an

23   automobile mechanic; instead, that person could engage in jobs involving light, unskilled

24   work currently available in California and nationally.  AR 85-86.  As examples, the expert

25   mentioned work as a cashier, packager, or arcade attendant.  AR 86.

26          **2.  The ALJ's Findings**

27          The ALJ found that Held failed to prove that he continued to be disabled under

28   Section 223(f) of the Social Security Act.  AR 39-41.  The ALJ arrived at this decision to

United States District Court
Northern District of California

1    terminate disability benefits after following an eight-step sequential evaluation process.

2    AR 29-30; *see* 20 C.F.R. § 404.1594(f).

3        At step one, the ALJ considers whether the claimant is engaging in substantial

4    gainful activity.  *Id.*  At step two, the ALJ determines whether the claimant has an

5    impairment or combination of impairments that meets or equals any of the Listed

6    Impairments under 20 C.F.R. pt. 404, subpt. P, app. 1.  *Id.*  At step three, the ALJ assesses

7    whether there has been medical improvement, such as any decrease in the medical severity

8    of the impairment(s).  *Id.*  At step four, the ALJ considers whether the improvement is

9    related to the claimant's ability to work and whether the claimant's capacity to perform

10   basic work activities has increased.  *Id.* At step five, if the ALJ found no medical

11   improvement (step three), or that the improvement was not related to the claimant's ability

12   to work (step four), the ALJ determines whether an exception to medical improvement

13   applies.  *Id.*  At step six, the ALJ will determine whether the claimant's impairments in

14   combination are severe.  *Id.*  At step seven**,** the ALJ assesses the claimant's residual

15   functional capacity based on the current impairments, and whether the claimant is capable

16   of performing her past relevant work.  *Id.*  At step eight, the ALJ examines whether the

17   claimant has the residual functional capacity to perform any other work.  *Id.*  In the end, if

18   the ALJ reaches step eight and finds that the claimant has the residual functional capacity

19   to perform other work, the claimant's disability has ended. *Id.*

20       Here, the ALJ's analysis covered all eight steps of the evaluation process.  At step

21   one, the ALJ found that Held did not engage in substantial gainful activity.  AR 31.  At

22   step two, the ALJ determined that Held's medical records, as a whole, no longer showed

23   he suffered from a listed impairment, and moreover, he now suffers from alcohol abuse

24   and obesity.  AR 31-33.  At step three, the ALJ determined that Held's severe impairments

25   had improved as evidenced by medical reports and Held's testimony.  AR 33.

26       Subsequently, at step four, the ALJ found that Held's medical improvements have

27   provided him with residual functional capacity to "perform light work as defined in 20

28   CFR 404.1567(b)" with a few additional limitations.  AR 34.  For instance, Held "must

United States District Court
Northern District of California

1    avoid moving machinery, unprotected heights, and hazardous machinery." AR 34.

2        In the step four determination, the ALJ engaged in a two-step process to evaluate

3    Held's symptoms. AR 34. First, the ALJ considered whether there was an "underlying

4    medically determinable physical or mental impairment . . . that could reasonably be

5    expected to produce [Held's] pain or other symptoms." AR 34. Second, the ALJ

6    evaluated to what extent the symptoms limited Held's "ability to do basic work activities."

7    AR 34. Additionally, whenever "these symptoms were not substantiated by objective

8    medical evidence," the ALJ made a finding considering the credibility of Held's

9    statements as to his limitations. AR 34-37.

10       After reviewing the symptoms, the ALJ concluded that Held's "medically

11   determinable impairment could have reasonably been expected to produce the alleged

12   symptoms." AR 36. But, the ALJ continued, "[Held's] statements regarding the intensity,

13   persistence, and limiting effects of these symptoms are not credible to the extent they are

14   inconsistent with the [ALJ's] residual functional capacity assessment[.]" AR 36.

15       Under the second sub-step of the symptom evaluation, the ALJ reviewed the

16   medical records by Held's physicians and the Social Security Administration's consulting

17   physicians. AR 37-39. Although Held's treating physician, Dr. Meyers, reported that

18   Held remained totally disabled from performing past work, the ALJ concluded Dr.

19   Meyers' report had limited probative value. AR 38-39. This is because it mistakenly

20   addressed Worker's Compensation disability criteria, rather than a substantive functional

21   capacity evaluation as required by the Social Security Act. AR 38-39 ("As a matter of law,

22   the Social Security Administration is not bound by any determinations of disability made

23   under the Worker's Compensation system.") (citation omitted).

24       Similarly, the ALJ discredited reports by Dr. William E. Talmage, one of Held's

25   examining physicians, for the same reasons. AR 38-39.  Instead, the ALJ relied heavily

26   on the unmodified opinion of the Social Security Administration's consultant, Dr. Calvin

27   Pon, in part because "his report reflects a complete orthopedic evaluation." AR 38. Dr.

28   Pon reported that Held be limited to light exertion work. AR 38.

United States District Court
Northern District of California

1   Because Held's reported "symptoms were not substantiated by objective medical

2   evidence," the ALJ stated that he had to evaluate Held's credibility.  AR 34.  The ALJ

3   found that Held was not credible—Held could not resolve the inconsistencies between his

4   reported limitations, his actual conduct, and Dr. Pon's findings. AR 36-37.  For instance,

5   the ALJ noted that contrary to Held's complaints of not being able to sit for long periods of

6   time, Held testified that he could drive for six hours at a time.   AR 35.  And even though

7   Held claimed he had difficulty doing household chores, during the hearing he testified that

8   he could cook, shop, wash dishes, do the laundry, take out the garbage, and sweep the

9   floor.  AR 36.

10   Furthermore, the ALJ found Held's credibility adversely affected by "evidence

11   indicat[ing] the claimant is abusing alcohol at the same that he is taking narcotic pain

12   medication."  AR 37.  This behavior "is contrary to the noted instructions he receives with

13   his medication; and it also demonstrates non-compliance with regard to his physician's

14   repeated instruction that he stop drinking."  AR 37.

15   In short, the ALJ made an adverse credibility finding against Held, and concluded

16   that his allegations of pain were inconsistent with his reported daily activities and the

17   objective medical evidence.

18   Because improvement was found at step four, the ALJ proceeded to step six and

19   concluded that Held's impairment remained severe.  AR 39.  At step seven, the ALJ

20   determined that Held could not perform his past relevant work.  AR 39-40.

21   Finally, at step eight, the ALJ found that "considering the claimant's age, education,

22   work experience and residual functional capacity, [Held] was able to perform a significant

23   number of jobs in the national economy," based on the vocational expert testimony

24   detailing "light work" jobs.  AR 40-41.

25   Consequently, the ALJ concluded that as of February 11, 2011, Held "was capable

26   of making a successful adjustment to work that existed in significant numbers in the

27   national economy."  AR 41.

28

1

### C.     The Appeals Council Review and Jurisdiction

2       Held appealed the ALJ's decision to the Appeals Council on August 10, 2012.  AR

3  24.  On September 4, 2013, the Appeals Council, without comment, denied his request for

4  review.  AR 1.  Held then initiated this district court action on December 16, 2013, seeking

5  judicial review of the Commissioner's decision.  Dkt. No. 1.  All parties consented to the

6  jurisdiction of a magistrate judge.  Dkt. Nos. 7, 9.

7       In this case, Held contends that the Commissioner erred as a matter of law on

8  several different issues, including the finding that Held is not disabled.  As such, the relief

9  Held seeks is reversal of the ALJ's decision.  Thus, while the immediate action comes in

10  the form of a "Motion for Remand," Dkt. No. 26, the Court will treat Held's motion as a

11  summary judgment motion.  *See* Dkt. No. 3 (Social Security Procedural Order stating that

12  plaintiff "shall serve and file a motion for summary judgment or remand within 28 days of

13  service of defendant's answer.").

14       Similarly, the Court treats Held's "Motion to Remand for Consideration of New

15  Evidence," Dkt. No. 27, as part of a summary judgment motion.  Held seeks to introduce a

16  medical report authored by Dr. Meyers, and dated August 27, 2014 ("the Meyers 2014

17  report"), as new evidence that he argues should have been considered by the ALJ.  Held

18  believes the ALJ would have reached a different outcome had the ALJ considered the

19  Meyers 2014 report.

20  ## II.   STANDARD OF REVIEW

21       A district court has the "power to enter, upon the pleadings and transcript of the

22  record, a judgment affirming, modifying, or reversing the decision of the Commissioner of

23  Social Security, with or without remanding the case for a rehearing."  42 U.S.C. § 405(g).

24       The decision of the Commissioner should only be disturbed if it is not supported by

25  substantial evidence or if it is based on legal error.  *Burch v. Barnhart*, 400 F.3d 676, 679

26  (9th Cir. 2005).  Substantial evidence is evidence that a reasonable mind would accept as

27  adequate to support the conclusion.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir.

28  2005) ("[It] is more than a mere scintilla but less than a preponderance.").  Where evidence

*United States District Court  Northern District of California*

1   is susceptible to more than one rational interpretation, the ALJ's decision should be

2   upheld.  *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

3   **III.   DISCUSSION**

4        Held argues that the ALJ (1) failed to develop a full and fair record; (2) improperly

5   weighed the medical evidence; (3) erred in his determination of Held's credibility; and (4)

6   did not provide substantial evidence to support his assessment of Held's residual functional

7   capacity.  Dkt. No. 26 at 2.  Further, Held urges the Court to remand the case and order the

8   ALJ to consider the Meyers 2014 report.  Dkt. No. 27.

9        The Court first evaluates whether the ALJ developed a full and fair record, and

10  whether it should remand the case in light of new evidence.  The Court then addresses

11  Held's remaining arguments.

12      **A.     Duty to Develop a Full and Fair Record**

13       ALJs in Social Security proceedings have a "special duty to fully and fairly develop

14  the record and to assure that the claimant's interests are considered."  *Smolen v. Chater*, 80

15  F.3d 1273, 1288 (9th Cir. 1996) (internal quotation marks and citation omitted); *see also*

16  *Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) ("[T]he ALJ should not be 'a

17  mere umpire' during disability proceedings.") (quoted sources omitted).  In particular,

18  when a claimant is not represented by counsel, "it is incumbent upon the ALJ to

19  scrupulously and conscientiously probe into, inquire of, and explore for all the relevant

20  facts."  *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992) (quoting *Cox v. Califano*,

21  587 F.2d 988, 991 (9th Cir. 1978)); *see also Chaudhry v. Astrue*, 688 F.3d 661, 669 (9th

22  Cir. 2012) (finding requirement that ALJ be "especially diligent" in developing record

23  when claimant is unrepresented does not apply where claimant is represented by counsel).

24          **1.  Obligation to Obtain Medical Evidence**

25       "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to

26  allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an

27  appropriate inquiry."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing

28  *Smolen*, 80 F.3d at 1288) (quotation marks omitted).  Still, "[a] specific finding of

United States District Court
Northern District of California

1   ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire,

2   where the record establishes ambiguity or inadequacy." *McLeod v. Astrue*, 640 F.3d 881,

3   885 (9th Cir. 2010).

4         When the ALJ's duty is triggered by inadequate or ambiguous medical evidence,

5   the ALJ has an obligation to obtain additional medical reports or records from the

6   claimant's treating physicians.  So "[i]f the ALJ thought he needed to know the basis of [a

7   doctor's] opinions in order to evaluate them, he had a duty to conduct an appropriate

8   inquiry, for example, by subpoenaing the physicians or submitting further questions to

9   them." *Smolen*, 80 F.3d at 1288.  It is simply not enough for the ALJ to bemoan the dearth

10  of medical evidence.  *Dervin v. Astrue*, 407 Fed. App'x. 154, 156 (9th Cir. 2010) (finding

11  ALJ criticized the lack of "a treatment history with clinical and diagnostic findings" but

12  failed to seek supplemental material from claimant's doctors).  In fact, the regulations

13  require the ALJ to make "every reasonable effort to help [the claimant] get medical reports

14  from [the claimant's] own medical sources[.]"  20 C.F.R. §§ 404.1512(d), 416.912(d).

15  This may include having to recontact the treating physician, or request additional records,

16  when the doctor has provided inadequate information.  20 C.F.R. §§ 4041520b(c),

17  416.920(c).

18        Here, the inadequacy of certain medical reports, mainly from Held's treating

19  physician, Dr. Meyers, triggered the ALJ's duty to conduct an appropriate inquiry.  *See*

20  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) ("[T]he opinion of an

21  examining physician is entitled to greater weight than the opinion of a nonexamining

22  physician.") (citation omitted).  The ALJ did examine a report from Dr. Meyers, dated

23  April 19, 2012 ("Meyers 2012 report").  There, Dr. Meyers concluded, "It is my opinion

24  that the patient is still totally disabled from working at his usual occupation, or at any

25  significant gainful employment."  AR 353.  Noting that the Meyers 2012 report failed to

26  attach x-rays, AR 79, the ALJ instructed Held to obtain those x-rays from Dr. Meyers and

27  emphasized, "[I]t's definitely critical that we have up-to-date medical information because

28  without it, you know, it's difficult to assess the case so it's important that you get that

1  information." AR 81.

2      Yet later in his opinion, the ALJ rejected the Meyers 2012 report.  He did so not on

3  the basis of the missing x-rays, but on the Meyers 2012 report's being addressed to "a state

4  Worker's Compensation address."  AR 38.  Given this, the ALJ concluded, "It is

5  reasonable to assume that [the Meyers 2012 report] was produced as part of a Worker's

6  Compensation matter."  AR 38.

7      The ALJ went on to correctly state, "As a matter of law, the Social Security

8  Administration is not bound by any determinations of disability made under the Worker's

9  Compensation system."  AR 38 (citation omitted).  Among other things, assessments in

10  worker's compensation cases "consider only an individual's ability to return to past work"

11  and does not include a function-by-function determination as to the claimant's residual

12  functional capacity.  AR 38-39.

13      But it is exactly this inadequacy within the 2012 Meyers report that triggered the

14  ALJ's duty to make reasonable efforts to address and develop issues raised by the medical

15  evidence.  Such reasonable steps could have included requesting more detailed statements

16  from Dr. Meyers.  For instance, the ALJ could have questioned Dr. Meyers about his

17  conclusions as to Held's disability under the Social Security Administration's criteria.  The

18  ALJ also could have asked Dr. Meyers to perform another evaluation of Held, and pointed

19  out the deficiencies in the doctor's prior evaluation (e.g., lack of a function-by-function

20  determination) that needed curing.  *Chase v. Astrue*, 458 F. App'x 553, 557 (7th Cir. 2012)

21  ("It is an ALJ's responsibility to recognize the need for further medical evaluations of a

22  claimant's conditions before making [residual functional capacity] and disability

23  determinations[.]").

24      In disagreeing with Held, the government argues that the ALJ's duty is only to

25  develop the record, "not create one."  Dkt. No. 32 at 14.  Admittedly, the ALJ did keep the

26  record open after the hearing to allow Held to submit additional records from his doctors.

27  *Id.* at 15.  But as part of the ALJ's responsibility to "scrupulously and conscientiously

28  probe into, inquire of, and explore for all the relevant facts," *Higbee*, 975 F.2d at 561, the

United States District Court
Northern District of California

1    ALJ should have specifically highlighted for Held, a pro se claimant, the deficiencies in

2    the 2012 Meyers report.  During the hearing, the ALJ could have instructed Held on the

3    need for a report that assesses disability under the Social Security Administration's rubric.

4    *See Booz v. Sec'y of Health and Human Servs.*, 734 F.2d 1378, 1381 (9th Cir. 1984)

5    (remanding for consideration of new evidence after ALJ failed to assure additional

6    evidence was obtained, despite giving claimant an opportunity to submit post-hearing

7    medical testimony).

8         To summarize, the ALJ failed to satisfy his duty to conduct a full and fair inquiry

9    by not taking further steps to obtain additional medical evidence in light of inadequacies

10   within the record.  Consequently, the ALJ based his findings under the eight-step

11   evaluation process on an incomplete medical record.

12        Accordingly, remand is warranted.  *See Kail v. Heckler*, 722 F.2d 1496, 1497 (9th

13   Cir. 1984) (remand proper where additional administrative proceedings that would include

14   "additional medical opinions regarding claimant's residual functional capacity" could

15   remedy defects).

16   **B.    New Evidence**

17        Under the Social Security Act, the district court may "at any time order additional

18   evidence to be taken before the Commissioner of Social Security, but only upon a showing

19   that there is new evidence which is material and that there is good cause for the failure to

20   incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g).

21        As mentioned above, Held seeks to introduce new evidence—the Meyers 2014

22   report—into the record that he argues would have changed the conclusions reached by the

23   ALJ had it been considered.  Dkt. No. 34.  Because Held filed the Meyers 2014 report after

24   the government had already submitted its cross-motion for summary judgment, the Court

25   requested additional briefing from the government regarding this document.  Dkt. No. 37.

26   The government responded, arguing that the Meyers 2014 report fails the good-cause

27   prong under 42 U.S.C. § 405(g).  Dkt. No. 38.  The government, however, failed to

28   substantially address the materiality prong.

United States District Court
Northern District of California

**1.  Materiality**

To be material, new evidence must bear directly and substantially on the matter in dispute.  *Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984) (citation omitted).  Evidence is material where there is a "*reasonable possibility* that the new evidence would have changed the outcome of the Secretary's determination had it been before him."  *Booz*, 734 F.2d at 1380 (internal quotation marks and citation omitted).  As such, it must be probative of the claimant's condition at or before the time of the disability hearing.  *See* 20 C.F.R. § 404.970(b); *Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 511 (9th Cir. 1988).

Here, the Meyers 2014 report is entitled, "Physical Residual Functional Capacity Assessment."  Dkt. No. 35 at 2.  It covered various areas, including Meyers' exceptional and postural limitations, and lists Dr. Meyers' primary diagnoses of "lower back pain with radiculopathy" and "spondylolisthesis."[1]  *Id.*  The report attached a 2005 report from a Dr. John L. Lavorgna ("the Lavorgna 2005 report"), who also diagnosed Held with spondylolisthesis, and concluded that Held is "not capable of performing his pre-injury work."  Dkt. No. 35 at 19.  Ultimately, Dr. Meyers in the Meyers 2014 report concluded:

> The patient's disability has not improved since Dr. Lavorgna's 2005 report; the patient has actually bedome [sic] more symptomatic over the ensuing 9 years.  Therefore it is difficult to me to ascertain how the patient could suddenly become 'better' with NO change in MRI or x-rays or clinical symptoms.

*Id.* at 6.

The Court finds that the Meyers 2014 report is material.  Because the report concerns medical impairments that Held suffered from at or before the time of the hearing (e.g., spondylolisthesis), the Meyers 2014 report bears directly and substantially on the

---

[1] Spondylolisthesis is defined as "forward displacement (olisthy) of one vertebra over another, usually of the fifth lumbar over the body of the sacrum, or of the fourth lumbar over the fifth, usually due to a developmental defect in the pars interarticularis."  *Oster v. Shinseki*, 2011 U.S. App. Vet. Claims LEXIS 2701, at *4 n.2 (U.S. App. Vet. Cl. Dec. 12, 2011) (citing Dorland's Illustrated Medical Dictionary 1754 (32d ed. 2012).

United States District Court
Northern District of California

disputed matter of Held's alleged disability.  AR 32-33 (ALJ observing that "[t]he objective MRI evidence confirms the spondylolisthesis.").  The Court also finds that there is a "reasonable possibility" the ALJ would have come to a different conclusion had this report been considered.  Indeed, the Meyers 2014 report addresses some of the deficiencies in the 2012 Meyers report.

For instance, the Meyers 2014 report does not make a worker's compensation assessment, but rather a Social Security disability assessment.  In fact, Dr. Meyers used a Social Security Administration form, Form SSA-4734-BK (1-89), which itself states is intended to be "used in making a decision on this claim."  Dkt. No. 35 at 2.  More importantly, Dr. Meyers concluded that Held's disability had not improved since 2005; he observed that Held actually became more symptomatic during the ensuing nine years.  *Id.* at 6.  In part, Dr. Meyers based this conclusion on reviewing objective medical evidence, such as recent x-rays.  *Id.*  This report may have changed the ALJ's assessments along the eight-step inquiry, such as the conclusions regarding Held's medical improvement.

## 2.  Good Cause.

"The good cause requirement often is liberally applied, where . . . there is no indication that a remand for consideration of new evidence will result in prejudice to the Secretary."  *Burton*, 724 F.2d at 1417-18 (citation omitted).  In *Burton*, the court held that "the fact that the additional evidence did not exist at the time of the ALJ's decision establishes good cause for [the claimant's] failure to introduce it before the ALJ."  *Id.*; *see Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982) (finding that "additional medical evidence, on its face, shows that it was made after the Secretary's final decision, and therefore could not have been presented at the hearing.").

Here, because Held's additional evidence could not have been presented at the time of the administrative hearing, this requirement is met.

The government objects.  In arguing that Held has not satisfied the good-cause prong, the government relies primarily on *Clem v. Sullivan*.  Dkt. No 38 at 2.  There, the Ninth Circuit held that "[a] claimant does not meet the good cause requirement simply by

United States District Court
Northern District of California

1    obtaining a more favorable report from an expert witness once his claim is denied." *Clem*

2    *v. Sullivan*, 894 F.2d 828, 332 (9th Cir. 1990).  While the government does acknowledge

3    that the author of the Meyers 2014 report is a treating physician, as opposed to an "expert

4    witness," it nonetheless believes "[t]his is not a meaningful distinction," and that *Clem*

5    should apply just as well.  *Id.*

6           On the contrary, the fact that Dr. Meyers is Held's treating physician is a

7    meaningful distinction.  Held did not pursue new expert witnesses who might better

8    support his position.  Instead he seeks to introduce additional medical records from his

9    long-standing provider to demonstrate his ongoing pain.  *See Embrey v. Bowen*, 849 F.2d

10   418, 424 n.5 (9th Cir. 1988) ("Rather than attempting to raise new issues, the [new medical

11   report] represents the ongoing medical evaluation of a consulting physician who had

12   already participated in the disability determination process."); *id.* (distinguishing evidence

13   rejected in *Allen v. Secretary of Health and Human Services*, 726 F.2d 1470, 1473 (9th Cir.

14   1984), where claimant "attempted to introduce the results of new tests and evaluations by

15   new expert witnesses.").

16          Further, Held argues that he was unaware of the need to obtain updated medical

17   reports from his physicians until he received the administrative record, shortly after which

18   he met with Dr. Meyers to obtain an amended evaluation that addressed the ALJ's

19   criticisms.  Dkt. No. 27 at 2 (indicating that he met with Dr. Meyers three weeks after

20   receiving administrative record); *cf. Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985)

21   (finding no good cause where claimant "offer[ed] no reason why he had not solicited this

22   [new] information from [the new expert witness] earlier").

23          Accordingly, because Held has satisfied both the materiality and good-cause

24   prongs, the Court finds remand proper so that the ALJ can evaluate the Meyers 2014

25   report.

26      **C.    Held's Other Arguments**

27          **1.  Proper Weight Given to Treating Physician**

28          Held argues that the ALJ improperly evaluated the medical evidence by discounting

1   the opinions of treating physicians like Dr. Meyers, and giving more weight to the

2   consulting physicians' opinions.  Dkt. No. 34 at 7-8.

3        Generally, if a claimant has a treatment relationship with a provider, and that

4   provider's opinion is supported by clinical evidence and not inconsistent with the record,

5   the provider will be given controlling weight.  20 C.F.R. § 416.927(c)(2).  "Even if

6   contradicted by another doctor, the opinion of an examining doctor can be rejected only for

7   specific and legitimate reasons that are supported by substantial evidence in the record."

8   *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298-99 (9th Cir. 1999).

9        Here, the ALJ relied heavily on the unmodified opinion of the Social Security

10  Administration's consultant, Dr. Calvin Pon, in part because "his report reflects a complete

11  orthopedic evaluation."  AR 38.  The Court finds that on remand, with consideration of the

12  Meyers 2014 report—which reflects a more complete evaluation of Held—the ALJ must

13  reevaluate the medical evidence and assign greater weight to Dr. Meyers' opinion in

14  comparison to other consulting providers.

### 2.  Credibility and Residual Functional Capacity

16       Held argues that the ALJ erred in his determination of Held's credibility.

17  Additionally, Held argues that the ALJ did not provide substantial evidence to support his

18  assessment of Held's residual functional capacity.

19       A claimant's residual functional capacity is what he can still do despite her

20  physical, mental, and other limitations.  *See Mayes*, 276 F.3d at 460; *see also* 20 C.F.R. pt.

21  404, subpt. P, app. 2, § 200.00(c).  In determining a claimant's residual functional

22  capacity, the ALJ "must take into account the claimant's testimony regarding his

23  capability, [and] . . . assess that testimony in conjunction with the medical evidence."

24  *Chaudhry*, 688 F.3d at 670.  When substantial evidence supports an ALJ's specific

25  findings regarding a claimant's credibility, a court may not second-guess that decision.

26  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

27       On remand, the ALJ should reevaluate Held's residual functional capacity in light

28  of the full record, which includes the Meyers 2014 report.  At this time, the Court will not

United States District Court
Northern District of California

1    decide if substantial evidence supports the ALJ's credibility determination.

2              **3.  The Lavorgna 2005 Report**

3              Held argues that the ALJ improperly did not consider or make part of the record a

4    report by Dr. John J. Lavorgna, dated September 14, 2005, which Held now submits to this

5    Court.  Dkt. No. 26 at 3-4, 11.  The report concludes that Held is partially disabled.  *See id.*

6              But Held improperly characterizes the Lavorgna 2005 report as "New Evidence."

7    In fact, the Lavorgna 2005 report is in the record.  It appears that Dr. Lavorgna's report

8    was listed on the administrative record's cover sheet as another report by Dr. William E.

9    Talmage.  *See* Dkt. No. 15-8 at 1; AR 336-350.  In discounting the weight of the treating

10   physicians' reports, the ALJ referred to "the older reports by William Talmage, M.D.,"

11   while citing Exhibits 8F-10F.  AR 38.  These exhibits include the Lavorgna 2005 report.

12   AR 38.

13             Because the yet to be considered Meyers 2014 report references the Lavorgna 2005

14   report, on remand, the ALJ should consider again whether the Lavorgna report is now

15   relevant to Held's evaluation.

16   **IV.   CONCLUSION**

17             In reviewing a Social Security Commissioner's decision, a court may remand the

18   case "either for additional evidence and findings or to award benefits."  *Smolen*, 80 F.3d at

19   1292.  Typically, when a court reverses an ALJ's decision, "the proper course, except in

20   rare circumstances, is to remand to the agency for additional investigation or explanation."

21   *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Moreover,

22   "[r]emand for further proceedings is appropriate where there are outstanding issues that

23   must be resolved before a disability determination can be made, and it is not clear from the

24   record that the ALJ would be required to find the claimant disabled if all the evidence were

25   properly evaluated."  *Taylor v. Comm'r of Soc. Sec.*, 659 F.3d 1228, 1235 (9th Cir. 2011)

26   (reversing and remanding for the consideration of new evidence instead of awarding

27   benefits).

28             In this case, the ALJ did not fully consider Dr. Meyers' opinion.  Because of the

United States District Court
Northern District of California

United States District Court
Northern District of California

new Meyers 2014 report that Held presented, unresolved issues, and legal errors, the Court concludes this case should be remanded for further administrative proceedings. *See Harman v. Apfel*, 211 F.3d 1172, 1180 (2000) ("Because neither the ALJ nor the vocational expert had the full picture before them, remand for further proceedings is particularly appropriate.").

For these reasons, and because the ALJ failed to fully and fairly develop the record when evaluating Held's disability claims,  the Court GRANTS IN PART Held's motion for summary judgment, DENIES Colvin's cross-motion for summary judgment, and REVERSES the ALJ's decision to terminate Held's disability benefits.  Held's motion to have the case reversed and remanded on the grounds that the ALJ erred in assessing Held's credibility is denied.

This case is REMANDED for further administrative proceedings in accordance with this Order.  Due to the fact that Held now presents new evidence that substantially and directly bears on the question of Held's disability, and satisfies the materiality and good-cause standards, the Court instructs the ALJ to consider the Meyers 2014 report when conducting the eight-step social security disability termination analysis.

**IT IS SO ORDERED.**

Dated:  March 2, 2015

NATHANAEL M. COUSINS
United States Magistrate Judge